UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE SANTOS,<br><br>*Plaintiff,*<br><br>-v-<br><br>JAMES C. KIMMEL a/k/a<br>JIMMY KIMMEL,<br>AMERICAN BROADCASTING<br>COMPANIES, INC., and<br>THE WALT DISNEY COMPANY,<br><br>*Defendants.* | Civil Action No.:<br><br>**COMPLAINT** |

Plaintiff George Santos ("Santos" or "Plaintiff"), by and through his attorneys, hereby files this complaint against Defendants James C. Kimmel ("Kimmel"), American Broadcasting Companies, Inc. ("ABC"), and Walt Disney Company ("Disney") for copyright infringement, fraudulent inducement, breach of contract, and unjust enrichment, as follows:

## INTRODUCTION

1. At the heart of this dispute lies the deliberate deception and wrongful appropriation of the Plaintiff's digital content by the Defendants, orchestrated through the platform Cameo.com, where celebrities and public figures are meant to connect with their fans through personalized video messages. Defendants openly admitted to deceiving the Plaintiff under the guise of fandom, soliciting personalized videos only to then broadcast these on national television and across social media channels for commercial gain—actions that starkly violate the original agreement and constitute clear copyright infringement.

2. Defendants' conduct also constituted fraud. Defendant Kimmel misrepresented himself and his motives to induce Plaintiff to create personalized videos for the sole purpose of

Page 1 of 14

capitalizing on and ridiculing Plaintiff's gregarious personality.  Kimmel not only boasted about intentionally deceiving Plaintiff, but played on the comedic irony of possibly getting sued by Plaintiff for fraud, claiming that it would be a "dream come true."  Kimmel's invitation of the instant lawsuit highlights the Defendants' brazen disregard for the fact that their "prank" violated the law.

3. While Plaintiff's recent legal issues have become a popular topic of conversation, Defendants' actions betray a sense of entitlement to Plaintiff's persona and creative work, as if Plaintiff's recent legal battles somehow negate his rights under the law.  This case underscores the principle that legal rights remain intact regardless of individual circumstances or public perception.

4. Through this action, Plaintiff seeks to address and rectify the unauthorized use of his copyrighted material, the deceitful tactics employed by the Defendants in obtaining said material, and the subsequent commercial exploitation of his persona and work.

## PARTIES

5. Plaintiff George Santos is an individual residing in New York. He is a public figure known for his career in politics and finance and the lawful copyright owner of the Cameo videos referenced herein.

6. Defendant Kimmel is an individual residing in California. He is the executive producer and host of ABC's late-night talk show Jimmy Kimmel Live!.  Kimmel also transacts business in New York.

7. Defendant ABC is a major American commercial broadcast television network with its principal place of business in New York, New York. It is the owns and produces Jimmy Kimmel Live!.

8. Defendant Disney is the parent company of ABC, with its principal place of business in Burbank, California. Disney also transacts business in New York.

## JURISDICTION AND VENUE

9. This is an action arising under the Copyright Act, 17 U.S.C. § 501.

10. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338 because it involves federal questions arising under the Copyright Act, as amended, 17 U.S.C. §§ 101 *et seq*.

11. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

12. Venue is proper under 28 U.S.C. §§ 1400(a) and 1391(c).

## FACTUAL BACKGROUND

13. Plaintiff George Santos recently created a profile on www.cameo.com ("Cameo"), a website that allows fans ("Users") to request personalized video messages from public figures and celebrities ("Talent").

14. By creating profiles on Cameo, Talent and Users agree to be bound by Cameo's Terms of Service.

15. Under Cameo's Terms of Service, Users may request personalized videos from Talent and obtain a license to use those videos. Users send Talent a description of what the User

would like the Talent to say in the personalized video and Talent may accept or reject the User's request.

16. Cameo offers two types of licenses, a personal use license, or a business license. The price for each type of license is set by the Talent at their sole discretion. Neither of these licenses permits the Users to broadcast the videos on national television. Such a license falls outside of the standard agreements provided by Cameo and would need to be independently negotiated between the User and the Talent.

17. Cameo also allows users to expedite the creation of their personalized videos by paying a rush fee.

18. All Cameo videos created by Talent for Users are wholly owned by the Talent. This is expressly provided in Cameo's Terms of Service published on their website and is a term to which all Users agree in signing up on the Cameo Website.

19. Through Cameo, Santos received requests from individuals and businesses seeking personalized video messages.

20. Unbeknownst to Santos, Kimmel submitted at least fourteen (14) requests for Cameo videos from Santos by providing phony names and narratives ("Fake Requests"). The Fake Requests were sent from fake User profiles created by Kimmel as part of the fraud. By creating the fake User profiles and submitting the Fake Requests, Kimmel falsely represented himself as multiple different Users seeking Santos' personalized Cameo videos for personal use.

21. Relying on Kimmel's Fake Requests, Santos created approximately fourteen (14) personalized Cameo videos ("Cameo Videos").

22. All the personalized Cameo Videos created by Santos were subject to the personal use license restrictions and were provided to the Defendants subject to the personal use license restrictions.

23. Kimmel chose the personal use licenses for all the Cameo Videos with the intention to violate such licenses by broadcasting and commercially exploiting the Cameo Videos on national television.

24. Defendants used Santos' Cameo Videos #1-5 for commercial purposes in violation of the personal use licenses and Santos' copyrights by broadcasting them on the Jimmy Kimmel Live! television show and by publishing those segments, containing identical copies of Cameo Videos #1-5, on Defendant ABC's social media platforms including YouTube (19.2 million subscribers), Instagram (5 million followers), TikTok (1.3 million followers), and X (2 million followers).

25. Starting on December 7, 2023, Defendants began publishing the Cameo Videos on Jimmy Kimmel Live!, explaining that Plaintiff has "a new gig making videos on Cameo for $400 a pop" and that Kimmel "couldn't resist so [Kimmel] sent George through Cameo a number of different [...] ridiculous requests."  Kimmel stated, "I didn't say they were from me I just wrote them and sent them to find out 'Will Santos Say It'." Defendant Kimmel then published identical copies of Cameo Videos #1-3.  Intending to continue capitalizing on Santos' Cameo Videos, Kimmel then teased, "I ordered about a dozen more of these, so um, join us all next week for the rest of them!"

26. Defendants posted the December 7, 2023, episode of Jimmy Kimmel Live! on YouTube with the title: "Jimmy Kimmel Pranks George Santos on Cameo, Trump Wants 'Loyalists' Only & the Chanucorn Returns!"

27. On December 11, 2023, Defendants again ran the segment on their nightly episode of Jimmy Kimmel Live! and published identical copies of Cameo Videos #4-5. During the episode Kimmel stated on television the following:

> KIMMEL: Yeah so now this Cameo thing, according to George, is really paying off. He claims he's made more money in seven days than he did in Congress for a year. And part of that money came from me. I sent him a bunch of crazy video requests because I wanted to see what he would read and what he wouldn't read, and I showed some of them on the air on Thursday, um, and now he's demanding [...] to be paid a commercial rate. Could you imagine if I get sued by George Santos for a fraud? I mean how good would that be? It would be like a dream come true. So since I started buying his videos his rates went way up to $500 a piece. He should be thanking me for buying these videos. But I have a big stockpile you want to see one? Again George had no idea these requests were from me, I just wrote them and sent them in. So "Will Santos say it?" Here we go […] [CAMEOS #4 and #5 were then published]

28. Defendants published the December 11, 2023 episode of Jimmy Kimmel Live! on YouTube with the title: "George Santos Demands $20,000 from Jimmy Kimmel, Trump Bails on Court & Clooney Christmas Surprise."

29. The corporate Defendants, through, and in concert with, Defendant Kimmel, directed their actions at Plaintiff, who was located in New York.

30. Upon information and belief, the December 7, 2023 episode published by Defendants, which contained identical copies of Cameo Videos #1-3, received 1.4 million views on YouTube in just three days and a TikTok video received over 1.6 million views in four days.

31. On December 12, 2023, Plaintiff's counsel sent Defendants a Cease and Desist Letter and demanded that they remove the content posted online.

32. Defendants claimed that they possessed a total of fourteen (14) of Santos' Cameo Videos and sought to continue running the segment and publishing the remaining videos. Defendants ultimately ceased publishing any additional Cameos Videos as a result of the Cease and Desist, but refused to remove the content they had previously published on all social media platforms and on the Defendants' website (https://abc.com/shows/jimmy-kimmel-live).

## COUNT I: COPYRIGHT INFRINGMENT
(17 U.S.C. § 101 et seq.)

33. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

34. Santos created Cameo Videos #1-5, as follows:

   a. Cameo Video #1: Created by Santos on December 6, 2023, at 1:50 p.m.

   b. Cameo Video #2: Created by Santos on December 6, 2023, at 2:06 p.m.

   c. Cameo Video #3: Created by Santos on December 7, 2023, at 9:29 a.m.

   d. Cameo Video #4: Created by Santos on December 7, 2023, at 9:36 a.m.

   e. Cameo Video #5: Created by Santos on December 7, 2023, at 9:34 a.m.

35. Plaintiff is the author and sole owner of the original copyrighted five (5) Cameo Videos that the Defendants unlawfully infringed ("Works").

36. The Works are unique, original audiovisual creations, fixed in the medium of a motion picture, that feature Santos speaking directly to the camera. The Works were created by

Santos using his own effort, creativity, and unique personality traits, to generate an inspiring message.

37. The Works are wholly original work that is copyrightable subject matter under the laws of the United States.

38. Plaintiff registered the Works with the Register of Copyrights pursuant to 17 U.S.C. § 411(a), each bearing the following respective Copyright Registration Numbers:

   a. Cameo Video #1: ("Santos 1") PA 2-449-879 (Effective January 16, 2024)

   b. Cameo Video #2: ("Santos 2") PA 2-449-882 (Effective January 16, 2024)

   c. Cameo Video #3: ("Santos 3") PA 2-451-684 (Effective January 25, 2024)

   d. Cameo Video #4: ("Santos 4") PA 2-451-685 (Effective January 25, 2024)

   e. Cameo Video #5: ("Santos 5") PA 2-451-683 (Effective January 25, 2024)

39. Plaintiff is currently and at all relevant times has been the sole proprietor of all rights, title, and interest in and to the copyrights of the Works.

40. Plaintiff has the exclusive rights under 17 U.S.C. § 106 to reproduce, distribute, publicly display, and create derivative works from the Works.

41. Without Plaintiff's permission, Defendants reproduced, distributed, and publicly displayed the Works, including on the television show Jimmy Kimmel Live! and on various social media platforms.

42. At no time did Plaintiff authorize the Defendants to reproduce, distribute, prepare derivative works, or publicly display the Works or any portion thereof.

43. Defendants' acts violate Plaintiff's exclusive rights under the Copyright Act.

44. Defendants' infringement was and continues to be willful and intentional, as Defendant Kimmel himself admitted it was a "prank".

45. Defendants are willfully infringing Plaintiff's copyright in the Works by reproducing, displaying, distributing, and/or creating derivative works of the Works without permission in violation of the Copyright Act, 17 U.S.C. § 106.

46. The infringement was, and continues to be, willful, executed with full knowledge of Plaintiff's copyright, and in conscious disregard of Plaintiff's exclusive rights in its protected Works.

47. Defendants profited from their unauthorized use of the Works without compensating Plaintiff.

48. By reason of the infringement, Plaintiff has sustained and will continue to sustain substantial injury, loss, and damage to its ownership rights in the copyrighted Works.

49. Because Plaintiff is without an adequate remedy at law, Plaintiff is entitled to an injunction, in accordance with 17 U.S.C. § 502, restraining Defendants, its officers, directors, agents, employees, representatives, assigns, and all persons acting in concert with the Defendants from engaging in further acts of copyright infringement.

50. Plaintiff is further entitled to recover from Defendants the gains, profits, and advantages Defendants have obtained as a result of copyright infringement.

51. Plaintiff is also entitled to recover statutory damages in accordance with 17 U.S.C. § 504.

52. Plaintiff is also entitled to recover costs and attorneys' fees in accordance with 17 U.S.C. § 505.

53. Plaintiff is informed and believes, and on that basis alleges, that unless enjoined by this Court, Defendants will continue its course of conduct and will continue to wrongfully use, infringe upon, sell, and otherwise profit from Plaintiff's copyrighted Works.

## COUNT II: FRAUDULENT INDUCEMENT

54. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

55. By creating fake profiles and falsely representing themselves as fans seeking personalized videos for personal use, Defendants knowingly made false representations of material fact to Plaintiff.

56. Specifically, Defendant Kimmel made fourteen (14) Fake Requests to Santos for personalized videos under the personal use license, including the following:

   a. On or about December 6, 2023, at approximately 4:46 p.m. Kimmel, misrepresenting himself as "Chris Cates" made the following fraudulent representation to Santos: "George please congratulate my friend Gary Fortuna for winning the Clearwater Florida Beef Eating Contest. He ate almost 6 pounds of loose ground beef in under 30 minutes – which was a new record! He's not feeling great right now but the doctor thinks he will be released from the hospital soon. Please wish him a speedy recovery!" ("Fake Request 1")

   b. On or about December 6, 2023 at approximately 4:55 p.m. Kimmel, misrepresenting himself as "Jane" made the following fraudulent representation to Santos: "George please congratulate my mom Brenda on the successful cloning of her beloved schnauzer Adolf. She and Doctor Haunschnaffer went through a lot of dogs in the trial runs but they finally got it to stick. Tell her to give Adolf a big belly rub for me!" ("Fake Request 2")

   c. On or about December 7, 2023, at approximately 12:18 p.m. Kimmel, misrepresenting himself as "Ron" made the following fraudulent representation to Santos: "My name is Ron. Please tell my wife to call me George. Not George my name is Ron. You are George. Just tell her to call me George. But again Ron. I haven't seen Swoosie or the kids since my

      disco birthday and it's not fair. She says I burned down the shed shooting off fireworks but I was trying to scare a bear away. It isn't fair. I love my Swoosie and I just want our family together on Christmas or if not that Valentimes Day or Flag. Watch out for bears." ("Fake Request 3")

    d. On or about December 7, 2023, at approximately 12:32 p.m. Kimmel, misrepresenting himself as "Uncle Joe" made the following fraudulent representation to Santos: "George can you please congratulate my legally blind niece Julia on passing her driving test. They said she couldn't do it – even shouldn't, but she's taught herself to be able to drive safely using her other sense. She's not a quitter! That said, the day after she got her license, she got in a really bad car accident so if you could also wish her a speedy recovery that would be amazing. She's in a bodycast and is a very bummed out - but with help from Jesus and President Trump, soon she will be back on the road!" ("Fake Request 4")

    e. On or about December 7, 2023, at approximately 12:26 p.m. Kimmel, misrepresenting himself as "Christian" made the following fraudulent representation to Santos:: "Hey George. My friend Heath just came out as a Furry and I'd love for you to tell him that his friends and family all accept him. His "fursona" is a platypus mixed with a beaver. He calls it a Beav-a-pus. Can you say we all love you Beav-a-pus? He also just got the go ahead from Arby's corporate to go to work in the outfit so we're all so happy for him to be himself at work and at home. Could you also do a loud "Yiff yiff yiff!"? That's the sound Beav-a-pus makes as Beav-a-pus. Thank you so much." ("Fake Request 5")

57. Defendants made such false representations to induce Plaintiff to provide personalized video content under the limited personal use license.

58. Given Cameo's terms and conditions, Plaintiff reasonably relied on Defendants' misrepresentations and provided the requested video content under the personal use license restrictions.

59. As a direct and proximate result of Defendants' fraudulent inducement, Plaintiff has suffered monetary damages.

## COUNT III: BREACH OF CONTRACT

60. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

61. Plaintiff entered into a valid contract with Defendants by providing the requested video content under Cameo's standard personal use license agreement.

62. The license agreement limited Defendants' use of the videos to non-commercial, personal purposes.

63. Defendants breached the license agreement by using Plaintiff's videos for commercial purposes on television, social media, and other platforms.

64. As a direct result of Defendants' breach, Plaintiff has suffered monetary damages.

## COUNT IV: UNJUST ENRICHMENT

65. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

66. By using the Cameo Videos for commercial purposes without permission or compensation, Defendants have unjustly retained profits and benefits at Plaintiff's expense.

67. Equity and good conscience require Defendants to compensate Plaintiff for the reasonable value of the commercial use of the Cameo Videos and disgorgement of Defendants' ill-gotten gains.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

A. For a preliminary and permanent injunction enjoining and restraining Defendants and all persons acting in concert with Defendants from reproducing, distributing, creating derivative works, displaying, advertising, promoting, offering for sale and/or selling, or performing any materials that are substantially similar to the copyrighted Works, and to destroy and certify to the Court such destruction or deliver to the Court for destruction or other reasonable disposition all such materials and means for producing same in Defendants' possession or control;

B. For a preliminary and permanent injunction enjoining and restraining Defendants and their agents, servants, employees, attorneys, and all persons acting in concert and participation with it from infringing upon Plaintiff's copyrights;

C. For actual damages, punitive damages, and disgorgement of Defendants' profits to be determined at trial, plus interest;

D. For statutory damages of $150,000 per infringement pursuant to 17 U.S.C. § 504, at Plaintiff's election;

E. For an award of reasonable attorney's fees and costs under 17 U.S.C. § 505; and

F. For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: February 16, 2024
      New York, New York

                        **MANCILLA & FANTONE LLP**

                        By: */s/ Andrew Mancilla*
                        Andrew Mancilla, Esq.
                        260 Madison Avenue – 22nd Floor
                        New York, New York 10016
                        Phone: (646) 225-6686
                        Fax: (646) 655-0269
                        andrew@law-mf.com

                        By: */s/ Robert Fantone*
                        Robert Fantone, Esq.
                        robert@law-mf.com


                        **Joseph W. Murray, Esq.**

                        By: */s/ Joseph Murray*
                        Joseph Murray, Esq.
                        185 Great Neck Road, Ste. 461
                        Great Neck, New York 11021
                        (646) 838 – 1702
                        joe@jmurray-law.com