UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGE SANTOS,

*Plaintiff,*

-v-

JAMES C. KIMMEL a/k/a JIMMY KIMMEL,
AMERICAN BROADCASTING COMPANIES
INC., and THE WALT DISNEY COMPANY,

*Defendants*.

Case No. 1:24-cv-01210-DLC

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

**MANCILLA & FANTONE, LLP**
Andrew Mancilla, Esq.
Robert Fantone, Esq.
260 Madison Avenue, 22nd Floor
New York, New York 10016
P (646) 225-6686
F (646) 655-0269

**JOSEPH W. MURRAY, ESQ.**
185 Great Neck Road, Ste. 461
Great Neck, New York 11021
(646) 838 – 1702

*Attorneys for Plaintiff George Santos*

i

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

LEGAL STANDARD ............................................................................................................ 3

DISCUSSION ........................................................................................................................ 6

I. DEFENDANTS' MOTION TO DISMISS UNDER FAIR USE IS PREMATURE ............ 5

II. DEFENDANTS SHOULD BE PRECLUDED FROM INVOKING THE PROTECTIONS
OF FAIR USE UNDER THE THEORY OF EQUITABLE ESTOPPEL AND BECAUSE IT
WOULD FRUSTRATE THE GOALS OF COPYRIGHT LAW ............................................. 6

III. ASSUMING ARGUENDO THAT THE COURT MAY CONSIDER THE
APPLICATION OF THE FAIR USE DOCTRINE TO THIS CASE, IT DOES NOT BAR
THE INSTANT PROSECUTION ............................................................................................. 9

    i.  The Purpose and Character of Use Weights Against Fair Use ...................................... 10

        (a) Defendants Use Is Not Transformative ................................................................. 10

        (b) Defendants Use Is Commercial .............................................................................. 13

        (c) Defendants' Bad Faith Should Preclude The Fair Use Defense ............................. 13

    ii. The Second Factor, Nature of the Copyright Work, Weighs Against Fair Use ........... 17

    iii. The Third Factor, The Quantity and Value of the Material Used
        Weighs Against Fair Use ............................................................................................ 18

    iv. The Fourth Factor, Effect On The Market, Weighs Against Fair Use ......................... 19

IV. SANTOS STATES A CAUSE OF ACTION FOR FRAUD ............................................ 20

V. PLAINTIFF'S STATE LAW CLAIMS ARE ADEQUATELY PLEAD AND
CANNOT BE PREEMPTED BY THE COPYRIGHT STATUTE ....................................... 21

CONCLUSION ..................................................................................................................... 25

## TABLE OF AUTHORITIES

**CASES**

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*,
  131 F. Supp. 3d 196 (S.D.N.Y. 2015)..................................................................................3
*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, ("*Warhol*")
  598 U.S. 508 (2023)...........................................................................................10, 12, 19
*Associated Press v. Meltwater U.S. Holdings*,
  931 F.Supp.2d 537 (S.D.N.Y. 2013)..................................................................................19
*Blanch v. Koons*,
  467 F.3d 244 (2d Cir. 2006)..............................................................................................10
*Brevet Holdings, LLC v. Enascor*, LLC,
  No. 21-cv-01540, 2022 U.S. Dist. LEXIS 17461 (S.D.N.Y. August 31, 2022)..................23
*BWP Media USA, Inc. v. Gossip Cop Media, LLC*,
  87 F. Supp. 3d 499 (S.D.N.Y. 2015)....................................................................................4
*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994)...................................................................................................3, 19
*Commissioner of the Dept. of Social Servs. Of the City of N.Y. v. New York-Presbyt. Hosp.*
  164 A.D.3d 93 (1ˢᵗ Dep't 2018) ........................................................................................24
*Dormitory Auth. of the State of N.Y. v. Samson Constr. Co.*,
  30 N.Y.3d 704 (2018) ......................................................................................................23
*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
  109 F.3d 1394 (9th Cir. 1997) ............................................................................................9
*Fioranelli v. CBS Broad. Inc.*,
  551 F. Supp. 3d 199 (S.D.N.Y. 2021)................................................................................14
*Glob. Network Commc'ns, Inc. v. City of New York*,
  458 F.3d 150 (2d Cir. 2006)................................................................................................4
*Goel v. Bunge, Ltd.*,
  820 F.3d 554 (2d Cir. 2016)................................................................................................4
*Google LLC v. Oracle Am., Inc.*,
  141 S. Ct. 1183 (2021)...................................................................................................8, 19
*Graham v. Prince*,
  265 F. Supp. 3d 366 (S.D.N.Y 2017)...................................................................................6
*Harper & Row, Publrs. v. Nation Enters.*,
  471 U.S. 539 (1985).....................................................................................................14, 15
*Hirsch v. CBS Broad. Inc.*,
  No. 17-cv- 1860, 2017 U.S. Dist. LEXIS 123468 (S.D.N.Y. Aug. 4, 2017)........................4
*Hosseinzadeh v. Klein*,
  276 F. Supp. 3d 34 (S.D.N.Y. 2017)..................................................................................12
*Hughes v. Benjamin*,
  437 F. Supp. 3d 382 (S.D.N.Y. 2020)................................................................................12
*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
  759 F. Supp. 2d 363 (S.D.N.Y. 2010)..................................................................................6

*In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*,
   581 F. Supp. 3d 509 (S.D.N.Y. 2022)..................................................................................18

*In re GE/CBPS Data Breach Litig.*,
   No. 20-cv-2903, 2021 U.S. Dist. LEXIS (S.D.N.Y. August 4, 2021) ................................25

*Infinity Broad. Corp. v. Kirkwood*,
   150 F.3d 104 (2d Cir. 1998)..............................................................................................19

*Jemzura v. Jemzura*,
   36 N.Y.2d 496 (1975) ......................................................................................................24

*Kane v. Comedy Partners*,
   2003 U.S. Dist. LEXIS 18513 (S.D.N.Y. Oct. 15, 2003) .......................................12, 14, 16

*Kelly-Brown v. Winfrey*,
   717 F.3d 295 (2d Cir. 2013)................................................................................................4

*LaChapelle v. Fenty*,
   812 F. Supp. 2d 434 (S.D.N.Y. 2011)..................................................................................3

*Lynk Media, LLC v. Peacock TV LLC*,
   No. 23-cv-5845 (JGK), 2024 U.S. Dist. LEXIS 84663 (S.D.N.Y. May 8, 2024) .........18, 20

*Miller v. Am. Tobacco Co.*,
   158 F. Supp. 48 (S.D.N.Y. 1957)........................................................................................6

*NXIVM Corp. v. Ross Inst.*,
   364 F.3d 471 (2d Cir. 2004)..............................................................................................14

*OTG Brands, LLC v. Walgreen Co.*,
   13-cv-09066, 2015 U.S. Dist. LEXIS 42629 (S.D.N.Y. March 31, 2015) .........................25

*Paramount Pictures Corp. v. Puzo*,
   No. 12-cv-1268, 2012 U.S. Dist. LEXIS 139827 (S.D.N.Y. September 26, 2012) ............23

*People v. Ernst & Young, LLP*,
   114 A.D.3d 569 (1st Dept. 2014)......................................................................................21

*Point 4 Data Corp v. Tri-State Surgical Supply*,
   2019 U.S. Dist. LEXIS 250232 (E.D.N.Y. March 26, 2019) .............................................23

*Port Chester Elec. Const. Corp v. Atlas*,
   40 N.Y.2d 652 (1976)) ......................................................................................................23

*Psihoyos, v. National Examiner*,
   No. 97-cv-7624 (JSM), 1998 WL 336655 .........................................................................13

*Riggs v. Palmer*,
   115 N.Y. 506 (1889) ...........................................................................................................6

*Rynasko v. New York University*,
   63 F.4th 186 (2d Cir. 2023) ..............................................................................................24

*Saudagar v. Walgreens Co.*,
   No. 18-cv-437, 2019 U.S. Dist. LEXIS 20967 (S.D.N.Y. February 8, 2019) ......................4

*Schwebel v. Crandall*,
   967 F.3d 96 (2d Cir. 2020)............................................................................................6, 11

*Silverman v. United Talmudical Acad. Torah Vyirah, Inc. (In re Allou Distribs.)*,
   446 B.R. 32 (Bankr. E.D.N.Y. 2011).........................................................................6, 7, 11

*Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*,
   502 U.S. 105 (1991).............................................................................................................8

iv

*Sony Corporation of America v. Universal City Studios*,
   464 U.S. 417 (1984)..................................................................................................13
*Swatch Grp. Mgmt. Servs. Ltd. V. Bloomberg L.P.*,
   756 F.3d 73 (2d Cir. 2014)..............................................................................3, 14, 16, 17
*TCA Television Corp. v. McCollum*,
   839 F.3d 168 (2d Cir. 2016)......................................................................................4
*Wild v. Rockwell Labs*,
   No. 19-cv-00919, 2020 U.S. Dist. LEXIS 68761 (W.D. Mo. April 20, 2020)......................5
*Yang v. Mic Network, Inc.*,
   405 F. Supp. 3d 537 (S.D.N.Y. 2019)...................................................................10, 12

**CONSTITUTIONAL PROVISIONS**

U.S. Const., art. I, § 8, cl. 8.........................................................................................7

## **PRELIMINARY STATEMENT**

Plaintiff respectfully submits this memorandum of law in opposition to the Defendants' motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)[1].

As a preliminary matter, and as a matter of equity, Defendants' application of fair use should be denied based on the nature of the Defendants' deceitful conduct.  However, if the Court is inclined to endeavor into the fair use analysis, controlling case law indicates that its application here would be premature because discovery is needed to develop the record.  This is confirmed by the Defendants' gratuitous and improper reliance on facts dehors the Amended Complaint.

With respect to fair use, the factors weigh against its application here.  First, Defendants' use not transformative because the original purpose was the product of Defendants' deceit.  Second, the nature of the Cameos was sufficiently creative and the question of their prior publication is disputed.  Third, the Defendants used the entirety of the Cameos, further weighing against the application of fair use.  Fourth, the Defendants' conduct undermines the integrity of the Cameo marketplace, and the licensing market in general.

 Santos' state law claims are not preempted because they are based on Kimmel's breach of contract in failing to use true and accurate information in creating his Cameo accounts, rendering the remaining state law claims qualitatively different from Santos' copyright claim.

With respect to the validity of Santos' state law claims, Santos' requests the remedy of disgorgement, thus validating his fraud claim despite his lack of out-of-pocket damages.

---

[1] Defendants' Memorandum of Law in support of its motion to dismiss the Amended Complaint, filed as ECF No. 22, is cited herein as "MTD".

Further, Santos is a third-party beneficiary of the User Site Terms of Service, and can therefore assert a breach of contract cause of action.  Additionally, an implied contract existed between Santos and Kimmel based on the circumstances of Kimmel's purchase of Cameos from Santos through the Cameo app.  The Amended Complaint also adequately described the Defendants' breaches (as described above) as well as damages.

## STATEMENT OF FACTS

Plaintiff George Santos, a public figure known for his career in politics, created a Cameo profile to offer personalized video messages to fans ("Users") of the platform for a fee. Am. Compl. at ¶13.  When creating profiles on Cameo, users and creators ("Talent") agree to Cameo's Terms of Service. *Id.* at ¶14.  Users can request personalized videos from Talent, who can accept or reject the request. *Id.* at ¶15.  Users choose between personal use and commercial use licenses, priced at the Talent's discretion. *Id.* at ¶16.  Neither license allows broadcasting the videos on national television. *Id.* Such broadcasting would require a separate, independently negotiated agreement between the User and the Talent. *Id.*

Defendants created fake User profiles and submitted fourteen (14) requests for personalized videos to Santos seeking a personal use license for each. *Id.* at ¶20.  In reliance on the Defendants' fraudulent and deceptive requests, Santos created approximately fourteen (14) personalized Cameo videos ("Cameos"). *Id.* at ¶21.  Santos created these Cameos by himself and featured himself addressing the User, using his own effort, creativity, and unique personality traits, to generate an inspiring message. *Id.*  ¶36.  These videos were provided to the Defendants subject to the personal use license restrictions. *Id.* at ¶22.  The Defendants used Santos' Cameos for commercial purposes by broadcasting them on National Television (*Id.* at ¶¶24, 25, 27) and on various ABC social media platforms, including Youtube, Instagram, TikTok, and X, further violating the personal use license and Santos' copyrights. *Id.* at ¶24.

On February 17, 2024, Plaintiff filed a Complaint asserting claims for copyright infringement, fraudulent inducement, breach of contract, and unjust enrichment. ECF No. 1. Subsequently, on May 24, 2024, Plaintiff filed an Amended Complaint which added an additional claim for breach of implied contract (ECF No. 20; Am. Compl. at ¶¶78, 79), which the Defendants moved to dismiss on June 7, 2024 (ECF No. 21, 22).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In evaluating a complaint under this standard, a court must accept as true the well-pleaded factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. *Id.*

## DISCUSSION

## I.   DEFENDANTS' MOTION TO DISMISS UNDER FAIR USE IS PREMATURE

Defendants' fair use defense cannot be decided on a Rule 12(b)(6) motion because it requires facts outside of the pleadings and development of the record.

 "Because fair use is an affirmative defense, it often requires consideration of facts outside of the complaint and thus is inappropriate to resolve on a motion to dismiss." *Id.*; *see also A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*, 131 F. Supp. 3d 196, 210 (S.D.N.Y. 2015). "The determination of fair use is a mixed question of fact and law." *Swatch Grp. Mgmt. Servs. Ltd. V. Bloomberg L.P.*, 756 F.3d 73, 81 (2d Cir. 2014). It is an "open-ended and context sensitive inquiry" that is "fact-driven[ ]" *LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 442 (S.D.N.Y. 2011); *see also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) ("the [fair use] statute, like the doctrine it recognizes, calls for case-by-case analysis").

Indeed, "there is a dearth of cases granting such a motion." *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015); *see also TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016); *Hirsch v. CBS Broad. Inc.*, No. 17-cv- 1860, 2017 U.S. Dist. LEXIS 123468, * 20-21 (S.D.N.Y. Aug. 4, 2017) (Engelmayer, D.J.).[2]

In rebutting a Defendant's fair use argument on a Rule 12(b)(6) motion, a plaintiff is "held only to the usual burden of a motion to dismiss . . . which is to say [he] must plead sufficient facts to plausibly suggest that they are entitled to relief." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013).

Here, the character of the Defendants' motion confirms the appropriateness of its denial. Although the Defendants request dismissal pursuant to Rule 12, it reads more like a Rule 56 application, attaching a four (4) page declaration and nineteen (19) exhibits, ten (10) of which present factual information extraneous to the pleadings.  While the Cameo Terms of Service (Exs. 1 and 2) and the Copyright Registrations (Exs. 14-18) are incorporated by reference into the Amended Complaint (*see e.g. Goel v. Bunge, Ltd*., 820 F.3d 554, 559 (2d Cir. 2016)), the numerous articles present a significant amount of information, the accuracy of which is generally inappropriate for the Court to consider on a Rule 12 motion to dismiss (Exs. 3-10, 13, 19). *Saudagar v. Walgreens Co*., No. 18-cv-437, 2019 U.S. Dist. LEXIS 20967, *8-9 (S.D.N.Y. February 8, 2019) (Failla, D.J.) (*citing Glob. Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 157 (2d Cir. 2006)).  Although the doctrine of "judicial notice" permits the Court to consider the fact that an article was published and the existence of the statements made therein, but the Court cannot deem any of the assertions or facts discussed in the articles as true at this early stage of the proceedings.  *Id*.

---

[2]  *See additionally*, *Grant v. Trump*, 563 F. Supp. 3d 278, 284 (S.D.N.Y. 2021); *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 421 (S.D.N.Y. 2021); *Nicklen v. Sinclair Broad. Grp., Inc.*, 551 F. Supp. 3d 188, 198-99 (S.D.N.Y. 2021); *May v. Sony Music Ent.*, 399 F. Supp. 3d 169, 187-88 (S.D.N.Y. February 13, 2019); *Graham v. Prince*, 265 F. Supp. 3d 366, 377, 379, 390-91 (S.D.N.Y. 2017).

Additionally, the Defendants' arguments inappropriately rely on disputed facts not present in the Amended Complaint.  *See Wild v. Rockwell Labs*, No. 19-cv-00919, 2020 U.S. Dist. LEXIS 68761 (W.D. Mo. April 20, 2020) (Ketchmark, D.J.).  For example, the Defendants' introduction asserts that "[e]ven before the television segments at issue here aired [Santos] began making [the Cameos] available on his Cameo profile page…"  MTD at 1.  In further attempting to convince the Court that Santos published all of Kimmel's Cameos prior to Kimmel's broadcasting of them on national television, the Defendants argue that "the social media commentary on the Videos suggests Santos also made the videos available online on his Cameo page…"  MTD at 15.  These allegations are squarely contradicted by the Amended Complaint, which alleges that Santos "did not publish the [Cameos] to anyone except Defendants…"  Am. Comp. at ¶44.

Defendants go further, attempting to use Exhibits 9 and 10 to mislead the Court, stating: "In fact, likely because **Cameo permits Santos to publicly display his videos** on his Cameo profile, both the media and others began to notice and repost Santos' Cameo videos, **including some of the Videos at issue in this case**, several days *before* they were ever broadcast on television."  MTD at 5 (emphasis in bold added, emphasis in italics in original).  The Defendants' citations to Exhibits 9 and 10 (MTD n.6, n.7), however, do not support the Defendants' assertions, which, again, contradict the allegations in the Amended Complaint.  Am. Compl. ¶44.  Notably, there is no indication that multiple Cameos were publicly available prior to Kimmel's broadcasts because Exhibit 10 mentions only one of the Cameos at issue in this case and Exhibit 9 does not mention any.  Nor do any of the articles establish that Santos caused the Cameos to be publicly displayed.

Defendants' attempts to supplement Santos' pleading with disputed facts supportive of their arguments evinces the need for discovery required to perform the complex fair use

5

analysis. *Graham v. Prince*, 265 F. Supp. 3d 366, 390-91 (S.D.N.Y 2017).  It also reveals the inadequacy of their Rule 12 application, which must therefore be denied.

## II.    DEFENDANTS SHOULD BE PRECLUDED FROM INVOKING THE PROTECTIONS OF FAIR USE UNDER THE THEORY OF EQUITABLE ESTOPPEL AND BECAUSE IT WOULD FRUSTRATE THE GOALS OF COPYRIGHT LAW

Defendants' attempted application of the fair use doctrine should be rejected in a case such as this, where the creation of the Cameos was caused by the Defendant's fraudulent and deceptive conduct.

First, that a wrongdoer should not be advantaged by his own wrongdoing is a concept baked into our jurisprudence. *Miller v. Am. Tobacco Co.*, 158 F. Supp. 48, 49-50 (S.D.N.Y. 1957) ("No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes."); *see also Riggs v. Palmer,* 115 N.Y. 506, 511-512 (1889).  Different iterations of this fundamental concept have been invoked in numerous different contexts such as contract law, statutes of limitations doctrine, as well as the affirmative defense of unclean hands. *See, e.g., Silverman v. United Talmudical Acad. Torah Vyirah, Inc. (In re Allou Distribs.)*, 446 B.R. 32, 67-68 (Bankr. E.D.N.Y. 2011); *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759 F. Supp. 2d 363, 378 (S.D.N.Y. 2010).  The Second Circuit has recognized that "equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Schwebel v. Crandall*, 967 F.3d 96, 102-03 (2d Cir. 2020) (internal quotations and citations omitted).

Here, this equitable doctrine precludes the Defendants from fair use protection because it would operate to essentially protect them from their own deceptive conduct, not

6

merely in the taking of the Cameos, but in the creation of the Cameos themselves.  Santos did not first make the Cameos that the Defendants then subsequently used.  Rather, the Defendants **first used Santos** by causing him to create the Cameos under false and deceptive pretenses, and then breached their own agreement with him.  Defendants were involved at the inception, prior to the creation of the Cameos, and actually caused the creation and purpose of the Cameos using fraudulent and deceptive means.  The Defendants hired Santos to create the Cameos for the sole purpose of using his creations to make fun of him.  The facts of this case are unlike any "fair use" case cited by the Defendants because the creation of the Cameos themselves in this case was caused by Defendants' original fraudulent and deceptive means.  To afford Defendants the benefit of the fair use doctrine would essentially be rewarding them for effectively deceiving Santos from the beginning.  Doing so would run afoul of these fundamental principles of equity. *Id.*

An analogy may be drawn to the concept of equitable tolling in the context of statutes of limitations.  Under that concept, where a defendant actively misled the plaintiff with respect to the timeliness for filing a cause of action, the defendant may be estopped from asserting a statute of limitations defense. *Silverman*, 446 B.R. at 67-68.  Here, the Amended Complaint alleges that Defendants actively mislead Santos concerning their identity and purpose in seeking the Cameos. Am Compl. at ¶20.  Santos then relied on those misrepresentations to his detriment by creating the Cameos. *Id.* at ¶21.  As discussed below, Defendants' primary argument is that in making those Cameos, Santos possessed a distinct purpose, and thus the Defendants' use was entitled to fair use protection as being transformative.  MTD at 11.  However, even assuming this were true, it was only by virtue of the Defendants' deception and misrepresentations that Santos possessed any independent or distinct purpose.  Defendants should be estopped from asserting this argument, as they should not be advantaged by their own wrongdoing. *See Simon & Schuster, Inc. v. Members of the*

7

*N.Y. State Crime Victims Bd.*, 502 U.S. 105, 119 (1991) (Court stated that "no one shall be permitted to profit by his own fraud, or to take advantage of his own wrong…").

Second, application of the fair use protections to the facts of this case would be antithetical to the purpose of copyright law.  "The major purpose of the Copyright Act is, as the Constitution states, "to promote the progress of Science and useful arts." U.S. Const., art. I, § 8, cl. 8.  The Supreme Court has held that the fair use doctrine is "an 'equitable rule of reason' that 'permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster.'" *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1196 (2021) (*quoting Stewart* v. *Abend*, 495 U. S. 207, 236 (1990) (internal quotation marks omitted)).[3]

Here, application of the fair use doctrine would frustrate the objectives of the copyright statute because Defendants' use in this case, in fact the creation of the Cameos themselves, were premised on Defendants' admitted deception of Santos. Am. Compl. at ¶25. There is absolutely no public policy grounds justifying the protection of those who use deception and false pretenses to induce a creator to create for the sole purpose of then exploiting that creation at the creator's expense and without providing appropriate compensation.  Were this the law it would protect anyone who could trick an artist into making art so long as their overall purpose and use was to ridicule the artist.  This is antithetical to the purpose of the copyright statute.

---

[3] *See also Cambridge Univ. Press v. Patton*, 769 F.3d. 1232, 1237 (11th Cir. 2014) ("[B]oundaries must be drawn carefully in order to assure that copyright law serves its intended purpose, which is to promote the creation of new works for the public good by providing authors and other creators with an economic incentive to create."); *Id*. at 1238 ("If we allow too much unpaid copying, however, we risk extinguishing the economic incentive to create that copyright is intended to provide."); *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2nd Cir. 2012) ("[E]ncouraging the production of creative work thus ultimately serves the public's interest in promoting the accessibility of such works."); *Mango v. Democracy Now! Prods.*, No. 18-cv-10588 (DLC), 2019 U.S. Dist. LEXIS 123550, at *5 (S.D.N.Y July 24, 2019) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 429) ("The Supreme Court has explained that 'copyright law ultimately serves the purpose of enriching the general public through access to creative works.'").

The Defendants attempt to frame their misconduct as mere "bad faith" within the fair use context. MTD at 13-14.  While we address these arguments below, we submit that confining the Court's analysis of the Defendants' "bad faith" through the lens of fair use ignores the fundamental distinction between this case and all other fair use cases.  Counsel has yet to find a single case in which a defendant accused of copyright infringement was also responsible for the creation of the work as part of a deceptive scheme.  Virtually every case relied on by the Defendants is distinguishable on these grounds, and for good reason, for creators would be disincentivized from creating out of fear that whoever commissioned the art misrepresented their identity and purpose to take advantage of the artist.  This position myopically ignores the perverse implications of the categorical application of this theory.  Accordingly, Defendants' application of the fair use doctrine to dismiss this case should be denied.

### III.   ASSUMING *ARGUENDO* THAT THE COURT MAY CONSIDER THE APPLICATION OF THE FAIR USE DOCTRINE TO THIS CASE, IT DOES NOT BAR THE INSTANT PROSECUTION

Defendants argue that Santos' copyright claims are barred by the fair use doctrine. Defendants are wrong.

#### A.    Legal Standard

The fair use factors identified by Congress were intended as "guidelines for 'balancing the equities,' not as 'definitive or determinative' tests." *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1399 (9th Cir. 1997).  "Congress observed that 'since the doctrine is an equitable rule of reason, no generally applicable definition is possible.' The four fair use factors 'are to be . . . weighed together, in light of the objectives of copyright 'to promote the progress of science and the useful arts.'" *Id.*

**B.    The Fair Use Doctrine Does Not Apply As A Matter of Law**

**i.    The Purpose and Character of Use Weights Against Fair Use**

"The first factor, 'purpose and character of use,' involves three sub-factors, which involve determining whether the use is: (1) transformative; (2) for commercial purposes; or (3) in bad faith." *Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 542 (S.D.N.Y. 2019) (*citing NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 477-78 (2d Cir. 2004)).   The first factor under 17 U.S.C. § 107(1) is the "heart of the fair use inquiry." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006).   Each of these sub-factors weighs against fair use.

**(a) Defendants Use Is Not Transformative**

Defendants' primary argument is that the secondary use of the Cameos is transformative in that it was used by Defendants for a different purpose - political commentary and criticism of Santos. MTD at 12-14.   Defendants are wrong - their argument is circular and frankly disingenuous.

"[T]he first factor (which is just one factor in a larger analysis) asks whether *and to what extent* the use at issue has a purpose or character different from the original." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, *("Warhol")* 598 U.S. 508, 529 (2023) (internal citations and quotations omitted) (emphasis in original).   The first question is thus what was the purpose of the original creation. *Id.*   The second question is then what was the purpose of the secondary use.   "A [secondary] use that has a further purpose or different character is said to be 'transformative.'" *Id.*   The Supreme Court has cautioned against "an overbroad concept of transformative use, one that includes any further purpose, or any different character" because it would have the unwanted effect of thwarting the incentives for creation.  *Id.* at 1275.   "[U]se that has a distinct purpose is justified because it furthers the goal of copyright, namely, to promote the progress of science and the arts, without diminishing the incentive to create."  *Id.* at 1276.

10

Defendants argue that while Santos' original "purpose in creating the Videos [was] to congratulate or otherwise communicate with the requester's friends or family" (*id.* at 13-14), Defendants' use of the Cameos was "completely different." *Id.* at 13. Defendants claim that they used the Cameos for the distinct purpose of "mocking and criticizing" by showing that he "had no shame about doing anything for money." MTD at 12-13. This argument is fundamentally flawed because Defendants themselves were responsible for creating the distinct purpose they claim that Santos possessed.

Defendants' theory caves in on itself - if Santos' purpose was indeed to congratulate people as described, it was only by virtue of Defendants' own malicious and deceptive conduct. Am. Compl. at ¶¶ 1, 2, 4, 60, 61, 62, 76, 81. Defendants cannot now seek refuge in the fair use concept of transformation that they themselves manufactured through deceit. Therefore, as discussed above in Section II, Defendants should be estopped from relying on it for purposes of the transformative analysis. *See Schwebel v. Crandall*, 967 F.3d 96, 102-03 (2d Cir. 2020); *see also Silverman v. United Talmudical Acad. Torah Vyirah, Inc. (In re Allou Distribs.)*, 446 B.R. 32, 67-68 (Bankr. E.D.N.Y. 2011) ("A defendant may be estopped from asserting a statute of limitations defense where plaintiff was induced by the defendant's fraud, misrepresentations or deception to refrain from filing a timely action") (internal citations omitted). This distinction is fatal to the Defendants' attempt to seek refuge in the fair use doctrine.[4]

Defendants rely on several cases for the proposition that a distinct purpose of the secondary use constitutes transformation. None of these cases are instructive because they assumed "purposes of use" by the creators that were untainted by the infringers' deceit. In

---

[4] Looking at it another way, the Amended Complaint alleges that the original purpose in creating the Cameos was the purpose possessed by the Defendants in engaging in their scheme to have Santos generate content for them. Am Compl. ¶¶ 2, 25. The purpose of the copyrighted Cameos never changed. If Santos possessed any independent purpose that was distinct from the Defendants' purpose, it was caused by the Defendant's own deceit.

*Kane v. Comedy Partners*, 2003 U.S. Dist. LEXIS 18513 (S.D.N.Y. Oct. 15, 2003) the court applied fair use protection to the Daily Show's use of a video clip from the plaintiff's public access show for the purpose of mocking public access shows. *Id.* at *4.  The Daily Show was not responsible for inducing the plaintiff in that case into creating the protected work that it ultimately used for its commentary.

In *Hughes v. Benjamin*, 437 F. Supp. 3d 382 (S.D.N.Y. 2020) the court applied fair use protection to an alleged infringer's use of the plaintiff's Youtube video clips that it reposted with commentary concerning the plaintiff's politics.  *Id.* at 391.  The alleged infringer in that case was in no way responsible for causing the plaintiff to create those Youtube clips. *Id.*

In *Yang v. Mic Network Inc.*, Nos. 20-4097, 2022 U.S. App. LEXIS 8195 (2d Cir. Mar. 29, 2022), the court applied fair use protection to an alleged infringer's screenshot of a New York Post article (which included the plaintiff's protected photograph) because the alleged infringer used the screenshot to criticize the article. *Id.* at *1.  There was no allegation that the alleged infringer had deceived the plaintiff into creating the protected photograph.

In *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34 (S.D.N.Y. 2017), the court applied fair use to the defendant's incorporation of the plaintiff's protected videos into the defendant's Youtube videos that contained criticism and commentary of the plaintiff's work, but the defendant did not cause creation of the original work. *Id.* at 39–40.

Finally, in *Warhol*, the Supreme Court applied fair use to Warhol's secondary use of the protected Campbell soup logo because he used the logo for the purpose of commenting on consumerism rather than to advertise soup. *Warhol*, 598 U.S. at 508.  Warhol did not cause the creation of the Campell soup logo for the purpose of commenting on consumerism.

Accordingly, while Defendants' cite numerous cases of transformation, none of them are instructive here because they all presuppose that the purpose of the original work was

genuine and not the product of fraud and deceit, let alone fraud and deceit by the Defendant.[5]
In any case, because the purpose analysis depends heavily on the subjective intent of the
parties, "fact-specific determinations" are needed to adequately resolve the issue. *See cf.*
*Grand v. Schwarz*, No. 15-cv-8779, 2016 U.S. Dist. LEXIS 61606, *14 (S.D.N.Y. May 10,
2016) (Wood, D.J.) (*citing Nasdaq Stock Mkt. v. Archipelago Holdings*, 336 F.Supp.2d 294,
305 (S.D.N.Y. 2004 ) (Cote, D.J.).

Lastly, even if the Court somehow concluded that it would be appropriate to use
Santos' deceptively induced "purpose" to gauge the transformative nature of the Defendants'
use, this is only one of the three sub-factors used in analyzing the first factor.

### (b) Defendants Use Is Commercial

The fact that Defendants used the Cameos for a commercial rather than a non-profit
purpose weighs against a finding of fair use. *Psihoyos, v. National Examiner*, No. 97-cv-7624
(JSM), 1998 WL 336655, at *3 (*citing Campbell*, 510 U.S. at 583-84); *Sony Corporation of
America v. Universal City Studios*, 464 U.S. 417, 449 (1984) (commercial use of copyrighted
material is presumptively unfair use).  Although transformation is key to this inquiry, as
argued above, the Defendants use in this case was not transformative.  Rather, their ultimate
broadcasting of the Cameos was merely the final product generated through their deceptive
scheme, which induced Santos to unwittingly generate humorous fodder to increase their
ratings and viewership. Accordingly, this factor tilts against fair use.

### (c) Defendants' Bad Faith Should Preclude The Fair Use Defense

The Defendants assert that their "bad faith" is irrelevant because it "plays little, if
any, role in the fair use analysis" and that Defendants' conduct alleged in this case is not "the

---

[5] To think of it another way, had Santos been in on the joke, and charged the Defendants accordingly,
Defendants would not be able to claim that the purpose of their use was distinct from Santos'.  It was only by
virtue of their deceit that Defendants are able to argue that Santos' original purpose was distinct from theirs.
This reasoning collapses in on itself.  The absurdity of Defendants' argument is exactly this: that Defendants'
use was "transformative" because they tricked Santos into creating the Cameos for a different purpose.

kind of 'bad faith' that might influence the analysis." MTD at 13.  Defendants are wrong, as the bad faith alleged in the Amended Complaint is egregious in nature and ought to preclude Defendants from taking refuge behind the protections of fair use.

With respect to the role that "bad faith" plays in the fair use analysis, Defendants' rely too heavily on the narrow interpretation that courts have attributed to "bad faith" in the fair use context, which has been restricted to situations where the infringer's bad faith is present in **obtaining or using the protected material**, not creating it. *See NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 475-76 (2d Cir. 2004) (the copyrighted material was allegedly procured through defendant's violation of her non-disclosure agreement); *Kane*, 2003 U.S. Dist. LEXIS 18513, at *19 (the copyrighted material was obtained by the infringer without her consent); *Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*, 861 F. Supp. 2d 336, 339 (S.D.N.Y. 2012) (the copyrighted material, a recording of a conference call, was obtained by the infringer when it made an unauthorized recording of it); *Fioranelli v. CBS Broad. Inc.*, 551 F. Supp. 3d 199, 242 (S.D.N.Y. 2021) (the copyrighted video footage was included in broadcast despite the fact that it was prominently watermarked "NOT FOR BROADCAST.").

In this regard, Defendants' reliance on recent cases that define "bad faith" simply does not account for the type or scale of misconduct present here.  However, to the extent any case may be considered for its import of "bad faith" to this context, we submit the Supreme Court's ruling in *Harper & Row, Publrs. v. Nation Enters*., 471 U.S. 539 (1985) may be somewhat instructive. *Id.* at 562-63.

"In *Harper & Row*, the defendants knowingly acquired a 'purloined manuscript' for the very purpose of preempting the plaintiff's first publication rights, rights already sold by the copyright owner, for which the defendants had an opportunity to bid." *NXIVM Corp.*, 364 F.3d at 478-79.  The Supreme Court rejected the fair use defense both because the defendants had failed to make any substantial transformative use of the copyrighted work and based on

the defendant's bad faith. *Harper & Row,* 471 U.S. at 543.  In so holding, the Supreme Court stated that "[f]air use presupposes good faith and fair dealing." *Harper & Row*, 471 U.S. at 562-63 (internal citations omitted).

While the defendants' conduct in that case is equally distinguishable from the Defendants' conduct here, their conduct undermined the purposes of copyright law.  Had the Supreme Court in *Harper & Row* concluded that theft of a manuscript to preempt the creator's first publication rights was fair use, it would have a detrimental effect on copyright's goal to foster creativity.  The same logic applies here because applying fair use under these circumstances will cause a constant distrust of those who commission art out of fear that if the creator is being deceived, he/she has no recourse in the law.

Here, the Amended Complaint alleges that Defendants engaged in egregious bad faith by using deception, fraud, and engaging in breach of contract, that would have the same negative impact on the goals of copyright law were it deemed fair use.  Am. Compl. at ¶¶ 1, 59, 71.  This is not a case in which Santos created a protected work that the Defendants later used for commentary purposes.  Rather, this is a case in which the copyrighted work itself was the product of Defendants' fraud and deception. Am. Compl. at ¶¶ 2, 20, 21, 37, 61, 62; *See Simon & Schuster, Inc.,* 502 U.S. at 119.  The creation of the Cameos themselves were maliciously induced by Defendants, for the sole purpose of deriding Santos. Am. Compl. at ¶25.  It was then used in violation of the very terms and conditions Defendants themselves entered with Santos. Am. Compl. at ¶¶ 71,73, 76.

Defendants argue that courts generally do not consider this type of conduct "bad faith in the fair use context" (MTD at 14) but the cases Defendants rely on for this argument, *Swatch* and *Kane*, are not at all similar with respect to the "type" of bad faith conduct here.

In *Kane*, the infringer engaged in "bad faith" by "misleading [the copyright owner] into believing that copyright law did not apply to public access television" and used "a clip of

her show without consent." *Kane*, 2003 U.S. Dist. LEXIS 18513, at *19.  However, there was "no evidence that plaintiff ever relied on such representations to her detriment" and in fact the court found that "defendants' efforts to contact plaintiff and inform her of their plan to use her show are evidence of defendants' good faith effort to initially seek her informed consent." *Id*. at *20.  This fact alone distinguishes it from the instant case, as the Amended Complaint unquestionably alleges that Santos relied on the Defendants' misrepresentations to his detriment. Am. Compl. at ¶¶ 21, 62.[6]

Here, unlike in *Kane*, the Defendants did not merely use Cameos that Plaintiff had made without permission and attempt to mislead him on the legal implications of their use, they actually induced the creation of the work itself through deception and fraud for the sole purpose of using it against Plaintiff.[7] Am. Compl. at ¶¶ 2, 44, 59, 61, 62.  What took place here is far more egregious.  This distinction is critical because while copyright law should protect the type of secondary use aimed at criticism that took place in *Kane*, **it should not protect those who deceive creators into creating.**

Nor is *Swatch* analogous to this case because the facts were vastly different and fair use was found based on the newsworthiness exception. *Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*, 861 F. Supp. 2d 336 (S.D.N.Y. 2012).  In *Swatch*, the plaintiff, a Swiss watch company, hosted a conference call with securities analysts to discuss the financial results of its recent earnings. *Id.* at 338.  A third party transcript service with access to the call made a recording of it and provided it to the defendant who then published the recording

---

[6] Understandably, the court also noted that "defendants' unauthorized use of plaintiff's television show" is not "itself evidence of bad faith" because rarely do artists authorize commentary and criticism and, more directly, "it is the question of whether authorization is required that the fair use inquiry intends to resolve." *Id*.  This is because the infringer in that case, the Daily Show, had used a clip of the plaintiff's show for the purpose of criticizing the Plaintiff's show, a secondary use that was clearly transformative in nature and one that is simply not present here. *Id.* at *11-12.

[7] Additionally, in stark contrast to *Kane,* Defendants here never contacted Santos to "inform [him] of their plan to use" the subject Works.  Had they done so, as alleged in the Amended Complaint, Santos may have agreed to defendants' proposed use and charged appropriately.  Santos is not blind to the satirical gold mine that is his gregarious personality, and is by no means unwilling to join in his own self-depreciation.

online to the defendant's paid subscribers.  Plaintiffs argued that fair use should not be found because Defendant lacked good faith in acquiring and distributing the recording of the call. *Id.* at 341.  The court discounted the defendant's bad faith because "the purpose and character of Defendant's use advanced the public interest of furthering full, prompt and accurate dissemination of business and financial news." *Id.* at 341.

The facts in *Swatch* are critically distinct from those here where the Defendants induced the creation itself by their "bad faith" misconduct.  The defendant in *Swatch* merely copied the copyrighted work, a recording of the earnings call, without authority.  Their misconduct could hardly be compared to the Defendants' conduct in this case, which was part of an overarching scheme.

Defendants offer absolutely no case with facts analogous to these from which the Court may be guided concerning "bad faith".  Their attempt to import the narrow interpretation of "bad faith" as that term has been interpreted in the fair use context is misplaced because the Defendants' "bad faith" misconduct in this case was not limited in scope to their "secondary use", it extended to, and was the impetus for, the creation of the work itself.  Accordingly, this factor weighs against fair use.

### ii.    The Second Factor, Nature of the Copyright Work, Weighs Against Fair Use

With respect to the second factor,[8] Defendants argue that this inquiry tilts in favor of fair use because (1) the Cameos were published prior to when JKL aired them and (2) Santos' copyright is "vanishingly thin." MTD at 17.  Defendants are wrong.

With respect to their first argument, the Amended Complaint alleges that the Cameos were not previously published to the public. Am. Compl. at ¶44.  To the extent that

---

[8] The second factor examines the "nature of the copyrighted work." 17 U.S.C. § 107(2). Courts consider "(1) whether the work if expressive or creative, with a greater leeway being allowed a claim of fair use where the work is factual or information, and (2) whether the work if published or unpublished." *Blanch v. Koons*, 467 F.3d 244, 256 (2d Cir. 2006). Nevertheless, the Second Circuit has acknowledged that this factor "has rarely played a significant role in the determination of a fair use dispute." *Authors Guild v. Google*, 804 F.3d at 220.

Defendants argue otherwise, such a finding would require development of the record for the reasons argued in Section I.

With respect to the Defendants' second argument, the Amended Complaint alleges that Santos created these Cameos by himself and featured himself addressing the User, using his own effort, creativity, and unique personality traits, to generate an inspiring message. *Id.* ¶36.  Drawing all inferences in favor of Santos, the videos represent the quintessential example of an expressive work where the performance adds value to the creation. *See, e.g., In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*, 581 F. Supp. 3d 509, 522 (S.D.N.Y. 2022) (concluding that the second factor weighed against fair use because plaintiff's works had some expressive or creative value in its performances and production) (internal quotation marks omitted); *see also Lynk Media, LLC v. Peacock TV LLC*, No. 23-cv-5845 (JGK), 2024 U.S. Dist. LEXIS 84663, at *9 (S.D.N.Y. May 8, 2024) ("[t]he videographers' clips "reflect[] [their] artistic choices of camera angle, exposure settings, and video length," suggesting that these works have at least some creative ingredients"). Thus, this factor weighs against fair use.

To the extent that Defendants claim otherwise in aid of their affirmative defense, these issues cannot be resolved on a motion to dismiss because they would require development of the record beyond the pleadings and likely expert opinion(s).  Indeed, none of the cases cited by the Defendants for this proposition were decided on a motion to dismiss. [9]

### iii.    The Third Factor, The Quantity And Value of The Material Used, Weighs Against Fair Use

Defendants argue that the third factor, which concerns whether "the quantity and value of the materials used are reasonable in relation to the purpose of the copying"

---

[9] *See Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412 (S.D.N.Y. 2018) (partially resolved at summary judgment); *N. Jersey Media Grp. Inc. v. Pirro*, 74 F. Supp. 3d 605 (S.D.N.Y. 2015) (denying summary judgment to defendant); *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1 (2021) (resolved by trial).

(*Campbell*, 510 U.S. at 586), weighs in their favor because the "thrust of the transformative purpose" required that they use the entirety of the Cameos, not merely a portion of them. Defendants are incorrect.  Even assuming the Court agreed that Defendants needed to show the whole video for the viewer to appreciate Defendants' "prank," such use should not weigh for or against fair use, as it is merely an extension of the "transformation" analysis.

However, the majority of courts conclude that where, as here, the entire work is used, this weighs against fair use.  *See Associated Press v. Meltwater U.S. Holdings,* 931 F.Supp.2d 537, 558 (S.D.N.Y. 2013) ("[A]ppropriation of a copyrighted work in its entirety weighs against a finding of fair use"); *see also Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 109 (2d Cir. 1998) ("[T]he more of a copyrighted work that is taken, the less likely the use is to be fair.").

Here, since Defendants used the Cameos in their entirety without any cuts, we submit that if anything, this factor weighs against a finding of fair use.  This is particularly true because, again, Defendants' use of the Cameos was not transformative.

### iv.    The Fourth Factor, Effect On The Market, Weighs Against Fair Use

The market-effects factor is concerned with whether an allegedly infringing work will lead to "[economic] losses [that] normally conflict with a copyright's basic objective: providing authors with exclusive rights that will spur creative expression." *Google LLC*, 593 U.S. at 35.  "[T]he question under this factor is not solely whether the secondary work harms an *existing* market for the specific work alleged to have been infringed." *Warhol*, 11 F.4th at 49 (emphasis in the original).  Rather, the question is whether "unrestricted and widespread conduct of the sort engaged in by [the defendants] would result in a substantially adverse impact on the potential [licensing] market." *Lynk Media, LLC v. Peacock TV LLC*, No. 23-cv-5845 (JGK), 2024 U.S. Dist. LEXIS 84663, at *5 (S.D.N.Y. May 8, 2024) (*citing Warhol*, 11 F.4th at 48).

19

Defendants argue that their use has not had any effect on the market because no such market exists for "being ridiculed." MTD at 20.  Defendants miss the point.  The Amended Complaint does not allege that the Defendants merely used Santos' Cameos to criticize him, it alleges that they engaged in a scheme to deceptively induce Santos into making the Cameos for their own profit. Am. Compl. at ¶¶ 20, 22, 23, 44.  The question in this case is not whether their secondary use usurped Plaintiff's market for the original, but whether their conduct would have a substantial adverse impact on the potential market in general. *Lynk Media,* 2024 U.S. Dist. LEXIS 84663, at *5.  To this the answer is yes, because sanctioning such deception and unauthorized use will directly decrease the potential market for Plaintiff and all other Talent on the Cameo platform by undermining the integrity of the platform itself and transactional concepts inherent in copyright generally.

Defendants' use of the Cameos after having lied about who they were and their purpose decreases the value of the licensing market because it creates a precedent that Cameo's Terms of Service, upon which both Users and Talent mutually rely, are meaningless.  It creates a dangerous precedent that any User who is clever enough to lie about who they are and why they want a Cameo video, can use it as fodder for ridicule, regardless of the specific limits identified in the Terms of Service.  It also threatens the Talent's ability to control their images, which will stifle the Cameo marketplace and licensing in general.  Accordingly, this factor weighs against fair use, and, at any rate, given complex market analysis that would be required for a more quantifiable impact, this issue cannot be resolved at the motion to dismiss stage. *Hayden*, 2022 U.S. Dist. LEXIS 127368 at *15.

## IV.    SANTOS STATES A CAUSE OF ACTION FOR FRAUD

Count II of Santos' Amended Complaint alleges Fraudulent Inducement. Am. Compl. at 58-63.  The cause of action stems from Kimmel's creation of the fake Cameo accounts he used to facilitate the fourteen requests for personalized videos from Santos.  *Id.*  The

Defendants argue that Count II should be dismissed because Santos failed to allege that he suffered "out of pocket pecuniary loss." MTD at 19. The Defendants also argue that any damages stemming from "copyright infringement – i.e., unauthorized use of the plaintiff's work […] do not support a separate claim for fraud." *Id*. at 21.

While Santos does not disagree with the out-of-pocket damage requirement described in the cases the Defendants rely upon, here Santos' requested remedies include disgorgement of Defendants' profits (Am. Comp. at 16(¶C)), which distinguishes Santos' pleading from those in the Defendants' cases.

As the First Department described in *People v. Ernst & Young, LLP*, 114 A.D.3d 569 (1st Dept. 2014):

> "[W]here, as here, there is a claim based on fraudulent activity, disgorgement may be available as an equitable remedy, notwithstanding the absence of loss to individuals or independent claims for restitution. Disgorgement is distinct from the remedy of restitution because it focuses on the gain to the wrongdoer as opposed to the loss to the victim. Thus, disgorgement aims to deter wrongdoing by preventing the wrongdoer from retaining ill-gotten gains from fraudulent conduct. Accordingly, the remedy of disgorgement does not require a showing or allegation of direct losses to consumers or the public; the source of the ill-gotten gains is 'immaterial'.

*Id*. at 569 (internal citations omitted).

For these reasons, Count II of the Amended Complaint states a cause of action for Fraudulent Inducement.

## V.   PLAINTIFF'S REMAINING STATE LAW CLAIMS ARE ADEQUATELY PLEAD AND CANNOT BE PREEMPTED BY THE COPYRIGHT STATUTE

### A.   Santos' State Law Claims Are Not Preempted

The remaining state law claims in Amended Complaint are based on distinct breaches, consisting of (1) the Defendants' failure to pay the required amounts for their intended use of the Cameos, and (2) Kimmel's use of false information and false identities in creating Cameo

accounts to deceive Santos.  *See e.g. id.* at ¶¶70-77.  These claims include Counts III (Breach

of Contract), IV (Breach of Implied Contract), and V (Unjust Enrichment).  *Id.* at ¶¶64-83.

       In their motion to dismiss, the Defendants argue that these state law claims are

preempted by federal copyright law.   Specifically, the Defendants state that such claims

"arise out of alleged use of the Videos beyond the scope of the license that Santos

acknowledges Defendants paid for – the precise type of claim that courts consistently hold is

preempted by the Copyright Act." MTD at 21.

       However, the Defendants fail to adequately address the breach alleged as a result of

Kimmel's false statements, stating merely that the provisions only apply to "Political Cameo

Products." MTD at 23.  The Defendants' argument is contradicted by section 1 of the User

Terms of Service, titled "CAMEO Marketplace," which states: "You agree to provide true,

accurate, current, and complete information.  You agree not to create a Site account using a

false identity or providing false information…" Ex. 1 at 3.  This language applies to all

Cameo purchases, not just "Political Cameo Products," thus invalidating the Defendants'

contention.

       Further, the contractual provisions requiring the use of true and accurate information

in creating Cameo accounts are separate and distinct from the protections afforded under

Copyright law, making Counts III, IV, and V qualitatively different than Santos' Copyright

claim (Count I).  For example, Kimmel's failure to provide Santos with true, accurate, and

complete information regarding his identity, as required by the User Site Terms of Service,

has nothing to do with Kimmel's improper use of the Cameos, thus rendering the necessary

proof and elements of Santos' contract claim different than his Copyright claim.  *Paramount*

*Pictures Corp. v. Puzo*, No. 12-cv-1268, 2012 U.S. Dist. LEXIS 139827, at *18-19 (S.D.N.Y.

September 26, 2012) (Nathan, D.J.) (*citing Forest Park Pictures v. Universal TV Network,*

*Inc.*, 683 F.3d 424 (2d Cir. 2012)); *see also*, *e.g., Point 4 Data Corp v. Tri-State Surgical*

*Supply*, 2019 U.S. Dist. LEXIS 250232, at *56 (E.D.N.Y. March 26, 2019) ("Limitations on the number of users who can utilize a copyrighted work bear no resemblance to any of the rights granted to a copyright holder under 17 U.S.C. § 106…"); *Brevet Holdings, LLC v. Enascor*, LLC, No. 21-cv-01540, 2022 U.S. Dist. LEXIS 17461, at *10-11 (S.D.N.Y. August 31, 2022) (Vyskocil, D.J.).

Additionally, Santos' remaining state law claims do not seek to enforce a Copyright "against the world"; they merely seek to enforce his rights under the contract against the Defendants. *Puzo*, 2012 U.S. Dist. LEXIS 139827 at *18-19.  For these reasons, Counts III, IV, and V of the Amended Complaint are not preempted.

### B. Santos' State Law Claims Are Valid

Defendants also attack Counts III, IV, and V of the Amended Complaint by asserting that they "fail[] to identify any actual contract with the Defendants." MTD at 22.  This argument lacks merit for two reasons:  First, New York State Law permits Plaintiff to file a breach of contract claim as a third-party beneficiary of the contractual terms contained in the User Site Terms of Service.  *Dormitory Auth. of the State of N.Y. v. Samson Constr. Co.*, 30 N.Y.3d 704, 711 (2018) (*citing Fourth Ocean Putnam Corp. v. Interstate Wrecking Co*., 66 N.Y.2d 38, 45 (1985) *and Port Chester Elec. Const. Corp v. Atlas*, 40 N.Y.2d 652, 655 (1976)) ("A third party may sue as a beneficiary on a contract made for its benefit.  We have previously sanctioned a third party's right to enforce a contract in two situations: when the third party is the only one who could recover for the breach of contract or when it is otherwise clear from the language of the contract that there was an intent to permit enforcement by the third party.") (internal quotations and citations omitted).

Here, the Amended Complaint alleges that Santos is an intended third-party beneficiary of the User Site Terms of Service.  The User Site Terms of Service specifically refer to Santos (the "Talent") throughout, and even describe the purchase options Talent and

23

Users typically utilize to complete commonplace Cameo transactions.  *See* Ex. 1 (ECF 23-1) at 2-4. Further, the User Site Terms of Service's "Fees and Payment" section specifically describes the ordering and payment procedures the Users and Talent must follow, specifically stating:  "e. Portion of Payment to Talent: Any payment for a CAMEO Video or any other offering, feature, or service on our Site, such as a tip, Direct Message, or sticker, will be divided between Cameo and Talent as provided for in Section 4.b of the Talent Terms of Service." *Id*. at 6.   Thus, Santos is an intended third-party beneficiary permitted to bring a cause of action.  *See Commissioner of the Dept. of Social Servs. of the City of N.Y. v. New York-Presbyt. Hosp*. 164 A.D.3d 93, 98-99 (1st Dep't 2018).

Second, at the very least, Santos has pled the existence of an express or implied contract between himself and the Defendants.  As described in the Amended Complaint, Kimmel communicated his requests directly to Santos on the Cameo app through the various fake Cameo accounts he created. Am. Compl. at ¶¶20, 60.  Santos likewise communicated his prices directly to Kimmel through the Cameo app and Kimmel offered payment through the Cameo app in connection with his requests.  *Id*. at ¶¶20-21.  Finally, Santos created and delivered the Cameos pursuant to Kimmel's payment and request. *Id*.  Thus, a contract existed between the parties.  *Jemzura v. Jemzura,* 36 N.Y.2d 496, 503-04 (1975) ("A contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct") (internal citations and quotations omitted); *see also*, *Rynasko v. New York University*, 63 F.4th 186, 197-98 (2d Cir. 2023) ("Under New York law, the existence of an implied contract is a question of fact.  Thus, the question before us is not whether [plaintiff's] plausible allegations necessarily establish an implied contract [...] the question is whether a reasonable factfinder *could* conclude that [plaintiff's] plausible

24

allegations demonstrate an implied contract…")(internal citations omitted)(emphasis in original).

Additionally, as explained at length above, Kimmel's failure to provide true and accurate information with respect to his identity constituted a breach of the User Site Terms of Service and the express or implied agreement (Ex. 1 at 3). *In re GE/CBPS Data Breach Litig.*, No. 20-cv-2903, 2021 U.S. Dist. LEXIS, *2 n.1, *28-34 (S.D.N.Y. August 4, 2021) (Failla, D.J.) (plaintiff stated a cause of action where terms contained in an online policy document created an implied contract between defendant and its employees); *OTG Brands, LLC v. Walgreen Co.,* No. 13-cv-09066, 2015 U.S. Dist. LEXIS 42629, *19-20 (S.D.N.Y. March 31, 2015) (Carter, J) (plaintiff stated a cause of action where terms on vender portal created implied in fact contract).

Lastly, the Amended Complaint alleges that Kimmel repeated this purchase procedure at least fourteen (14) times (Am. Compl. at ¶¶20-21, 32), and that Santos suffered damages as a direct and proximate result of Defendants' conduct.[10] *Id*. at ¶¶77,79.  Therefore, the Amended Complaint alleges fourteen (14) different breaches by the Defendants.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint should be DENIED.

MANCILLA & FANTONE LLP

By*: /s/ Andrew Mancilla*
Andrew Mancilla, Esq.
260 Madison Avenue – 22nd Floor
New York, New York 10016
Phone: (646) 225-6686
Fax: (646) 655-0269
andrew@law-mf.com

---

[10] Defendants are also incorrect in asserting that Santos invented a supposed price of the non-existent license as approximately $15,000.00. MTD at 24.  This was the cost of an expedited business (commercial) license, which was likely much less than the amount Santos would have charged for the license Kimmel actually needed.

By*: /s/ Robert Fantone*
Robert Fantone, Esq.
robert@law-mf.com


**Joseph W. Murray, Esq.**

By: */s/ Joseph Murray*
Joseph Murray, Esq.
185 Great Neck Road, Ste. 461
Great Neck, New York 11021
(646) 838 – 1702
joe@jmurray-law.com

*Attorneys for Plaintiff George Santos*