UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGE SANTOS,

        Plaintiff,

- against -

JAMES C. KIMMEL a/k/a JIMMY KIMMEL,
AMERICAN BROADCASTING COMPANIES,
INC., and THE WALT DISNEY COMPANY,

        Defendants.

Case No. 1:24-cv-01210-DLC

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Nathan Siegel
Eric Feder
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005
(202) 973-4200
nathansiegel@dwt.com
ericfeder@dwt.com

Raphael Holoszyc-Pimentel
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
(212) 489-8230
rhp@dwt.com

*Attorneys for Defendants James C. Kimmel a/k/a
Jimmy Kimmel, American Broadcasting Companies,
Inc., and The Walt Disney Company*

# TABLE OF CONTENTS

|      |                                                                                          | Page |
|------|------------------------------------------------------------------------------------------|------|
| I.   | THE ISSUE OF FAIR USE IS RIPE FOR DECISION .............................................. | 1    |
| II.  | SANTOS' "EQUITABLE ESTOPPEL" ARGUMENTS HAVE NO BASIS IN LAW ................. | 1    |
| III. | DEFENDANTS MADE A FAIR USE OF THE VIDEOS ............................................. | 4    |
|      | A. The Purpose and Character of the Use Was Highly Transformative .............. | 4    |
|      | B. The Videos Were Previously Published and Minimally Creative ................... | 5    |
|      | C. The Portion Used Was Integral to the Criticism ............................................. | 6    |
|      | D. The Use Had No Effect on the Relevant Market ........................................... | 7    |
| IV.  | THE FRAUD CLAIM FAILS FOR LACK OF OUT-OF-POCKET LOSS ....................... | 8    |
| V.   | THE REMAINING STATE-LAW CLAIMS FAIL AND ARE PREEMPTED ................. | 8    |
| VI.  | CONCLUSION .................................................................................................... | 10   |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ABKCO Music, Inc. v. Sagan*,
  50 F.4th 309 (2d Cir. 2022) ............................................................................................1

*Am. Geophysical Union v. Texaco Inc.*,
  60 F.3d 913 (2d Cir. 1994) ..............................................................................................8

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
  11 F.4th 26 (2d Cir. 2021), *aff'd*, 598 U.S. 508 (2023) ...................................................7

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
  598 U.S. 508 (2023) .........................................................................................................4

*Arroyo v. Plover Hous. Dev. Fund Co.*,
  No. 451329/2018, 2019 WL 3413541 (Sup. Ct. N.Y. Cnty. July 29, 2019) ...................9

*Associated Press v. Meltwater U.S. Holdings, Inc.*,
  931 F. Supp. 2d 537 (S.D.N.Y. 2013) .............................................................................7

*Berlin v. E.C. Publ'ns, Inc.*,
  329 F.2d 541 (2d Cir. 1964) ............................................................................................2

*Brammer v. Violent Hues Prods., LLC*,
  922 F.3d 255 (4th Cir. 2019) ...........................................................................................4

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) .........................................................................................................7

*Cariou v. Prince*,
  714 F.3d 694 (2d Cir. 2013) ............................................................................................4

*Coatney v. Ancestry.com DNA, LLC*,
  93 F.4th 1014 (7th Cir. 2024) ..........................................................................................9

*Cohn v. Guaranteed Rate Inc.*,
  130 F. Supp. 3d 1198 (N.D. Ill. 2015) .............................................................................9

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) ...........................................................................................3

*Google LLC v. Oracle Am., Inc.*,
  593 U.S. 1 (2021) .............................................................................................................1

*Harper & Row Publishers, Inc. v. Nation Enters.*,
 471 U.S. 539 (1985)........................................................................................................6

*Hosseinzadeh v. Klein*,
 276 F. Supp. 3d 34 (S.D.N.Y. 2017).................................................................................5

*Infinity Broad. Corp. v. Kirkwood*,
 150 F.3d 104 (2d Cir. 1998)..............................................................................................7

*Kaufman v. Cohen*,
 No. 601320/01, 2007 WL 6847230 (Sup. Ct. N.Y. Cnty. Jan. 24, 2007)..................8

*LCO Destiny, LLC v. Michaels Stores, Inc.*,
 No. 07-CV-1140, 2008 WL 11355387 (N.D.N.Y. June 17, 2008)............................8

*Nikolic v. Seidenberg*,
 610 N.E.2d 177 (Ill. App. 1993) .......................................................................................9

*NXIVM Corp. v. Ross Inst.*,
 364 F.3d 471 (2d Cir. 2004)....................................................................................2, 3, 5

*People v. Ernst & Young, LLP*,
 114 A.D.3d 569 (1st Dep't 2014) ....................................................................................8

*Smith v. Apple, Inc.*,
 583 F. Supp. 3d 554 (S.D.N.Y. 2022) (Cote, J.).....................................................10

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
 756 F.3d 73 (2d Cir. 2014)................................................................................................7

*Yang v. Mic Network Inc.*,
 No. 20-4097, 2022 WL 906513 (2d Cir. Mar. 29, 2022)..........................................4

**Statutes**

17 U.S.C.
 § 101................................................................................................................................5
 § 107................................................................................................................................7

Defendants respectfully submit this reply memorandum of law in further support of their Motion to Dismiss the Amended Complaint, with prejudice (ECF Nos. 21–23) ("Motion").

## I. THE ISSUE OF FAIR USE IS RIPE FOR DECISION

In his Opposition to the Motion (ECF No. 25 ("Opp.")), Santos first argues that the issue of fair use cannot be decided at the pleading stage. Opp. at 1. But he identifies no relevant factual issues for discovery, and the law is clear that courts may grant motions to dismiss infringement claims on fair use grounds. *See* ECF No. 22 ("MTD") at 7–8 & n.10.

Instead, Santos complains that some of the exhibits to Defendants' Motion were news articles. *See* Opp. at 4. But he concedes that a court may take judicial notice of "the fact that an article was published and the existence of the statements made therein." *Id*. That is the only purpose for which the articles were included – to provide context for Defendants' criticism by showing the *existence* of press coverage and commentary on Santos' foray into Cameo videos. Finally, Santos tries to claim there are "disputed facts" about whether Santos "published" the Videos on his own Cameo profile. Opp. at 5. But, as set forth in Part III.B below, that fact is not material to the issue of "publication" for purposes of the fair use analysis, nor any other issue in the case. The Motion is therefore ripe for decision.

## II. SANTOS' "EQUITABLE ESTOPPEL" ARGUMENTS HAVE NO BASIS IN LAW

Santos' core argument is that Defendants are equitably estopped from raising the fair use defense because of their allegedly "fraudulent and deceptive conduct." Opp. at 6. But equitable estoppel is an affirmative defense to a claim of copyright infringement, *see, e.g.*, *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 321 (2d Cir. 2022), not a doctrine a plaintiff may invoke to estop the affirmative defense of fair use. Rather, the test for fair use already considers any alleged "bad faith" conduct on the defendant's part, and the law is clear that it has little, if any, relevance to the inquiry. *See Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 32 (2021) ("express[ing] ...

skepticism" that good faith is ever relevant, as "copyright is not a privilege reserved for the well-behaved"); *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 479 n.2 (2d Cir. 2004).

Santos argues this case should be an exception to that principle because Defendants allegedly used deceptive conduct to cause the Videos to be created. To the contrary, that kind of alleged "bad faith" is even less relevant to the issue of fair use here. That is because Santos' infringement claim does not challenge nor even concern how the Videos were created. Rather, Santos agrees Defendants had a "personal use" license to the Videos under the Cameo Site Terms, which they were entitled to exploit, regardless of how that license was obtained. *See* Am. Compl. ¶ 22. His complaint is that Defendants exceeded the scope of that license by broadcasting their critique of the Videos to a national audience without first obtaining permission to ridicule him and, if granted, pay his desired level of compensation. *See id.* ¶¶ 23–24, 49. But it is well settled that courts "must occasionally subordinate the copyright holder's interest in a maximum financial return to the greater public interest in the development of art, science and industry." *Berlin v. E.C. Publ'ns, Inc.*, 329 F.2d 541, 544 (2d Cir. 1964).

Thus, Santos' supposed parade of horribles has no basis either in copyright law or in fact. He contends that applying fair use here would be antithetical to the purposes of copyright law because "anyone ... could trick an artist into making art so long as their overall purpose was to ridicule the artist," which would "disincentivize[]" artists from creating, "out of fear that whoever commissioned the art misrepresented their identity and purpose to take advantage of the artist." Opp. at 8–9. But, as Santos must concede, anyone can seek a Cameo video and then use it to ridicule the celebrity, including on social and other media, provided the distribution was for "personal, non-commercial" purposes. Site Terms § 2(d) (Siegel Decl. Ex. 1). Santos'

2

arguments imply that copyright law seeks to protect creators from potential ridicule of their works, but nothing in copyright law, let alone the fair use doctrine, supports that proposition.

Likewise, Santos' lofty rhetoric about "fundamental principles of equity" (Opp. at 7) falls flat. As Judge Jacobs cogently explained when concurring in *NXIVM*:

> Fair use is not a doctrine that exists by sufferance, or that is earned by good works and clean morals; it is a right—codified in § 107 and recognized since shortly after the Statute of Anne—that is "necessary to fulfill copyright's very purpose, '[t]o promote the Progress of science and the useful arts ....'" ... [C]opyright is not about virtue; it is about the encouragement of creative output, including the output of transformative quotation.

*NXIVM*, 364 F.3d at 485 (Jacobs, J., concurring). Here, Defendants used the Videos to create a pointed, satirical critique of an indicted former Congressman's willingness to provide patently absurd Cameo videos for a few hundred dollars apiece – which is precisely the type of "transformative quotation" that copyright law is intended to protect. Cameo's Community Guidelines also explicitly recognize that "clearly satirical" content, even if it otherwise violates the Site Terms, may "serve the public interest." Guidelines § B (Siegel Decl. Ex. 2).

To the extent Santos seeks redress for alleged harms from allegedly deceptive conduct, whether he is entitled to that (which he is not) would be the province of state laws governing fraud and contracts, which are addressed *infra* Parts IV–V. But such "harms are untethered from—and incompatible with—copyright and copyright's function as the engine of expression." *Garcia v. Google, Inc.*, 786 F.3d 733, 745 (9th Cir. 2015). In fact, Santos' own arguments on his state law claims concede this crucial point.[1]

---

[1] *See* Opp. at 22 ("Kimmel's failure to provide Santos with true, accurate and complete information regarding his identity ... *has nothing to do with improper use of the Cameos*, thus rendering the necessary proof and elements of Santos' contract claim different than his Copyright claim." (emphasis added)).

3

Finally, Santos' suggestion that a finding of fair use will cause artists to "constant[ly] distrust" those who commission them strains credulity. Opp. at 15. There is little risk that today's Michelangelos and Rembrandts will be solicited to sculpt or paint a "beav-a-pus," and even less risk that they would immediately and gleefully comply if they were.

## III. DEFENDANTS MADE A FAIR USE OF THE VIDEOS

A straightforward application of the four fair use factors establishes that the alleged infringement here was a fair use. Santos' arguments largely rely on trying to import the same flawed estoppel arguments into those factors.

### A. The Purpose and Character of the Use Was Highly Transformative

Santos essentially concedes that the purpose of the original Videos and Defendants' use of them was entirely different. Nonetheless, here too Santos argues that the transformative test has no application if the "purpose" of the original work was "the product of ... fraud and deceit by the Defendant." Opp. at 12–13. Santos offers no authority nor explanation for why that distinction should effectively swallow the transformative analysis, and, at bottom, this is the same freestanding "equitable estoppel" argument that has no basis in copyright law.

Moreover, Santos misstates the transformative test, which does not turn on "the subjective intent of the parties." Opp. at 13; *see Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 544 (2023) ("the subjective intent of the user" does *not* determine the purpose of the use); *see also Brammer v. Violent Hues Prods., LLC*, 922 F.3d 255, 263 n.3 (4th Cir. 2019) ("[T]he parties' subjective intent is not the proper focus of the transformation inquiry."). Instead, the first factor is "an objective inquiry into what use was made." *Warhol*, 598 U.S. at 545. "[T]he key to this inquiry is 'how the work in question appears to the reasonable observer.'" *Yang v. Mic Network Inc.*, No. 20-4097, 2022 WL 906513, at *1 (2d Cir. Mar. 29, 2022) (quoting *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013)).

Here, a reasonable observer would perceive the original Videos to be head-scratching examples of Cameo videos in which a celebrity passes along messages to a fan's family and friends. By contrast, the JKL segments harshly criticize and ridicule those Videos and their creator. That is a quintessential transformative fair use, and no further analysis of "subjective intent" is relevant. *See, e.g.*, *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 45 (S.D.N.Y. 2017).

Moreover, even if the parties' subjective states of mind were relevant, the outcome would be no different. Santos argues he "created these Videos by himself ... using his own effort, creativity, and unique personality traits, to generate an inspiring message." Opp. at 18; *see also* Am. Compl. ¶ 36 (Santos created the Videos to "convey[] *his* feelings of hope, strength, perseverance, encouragement, and positivity" (emphasis added)). That is plainly a very different subjective purpose than Defendants' purpose.

Finally, Santos' arguments about "bad faith" for purposes of the first factor are addressed *supra* Part II. And it is well settled that commerciality is entitled to little weight where, as here, Defendants' use was highly transformative. *NXIVM*, 364 F.3d at 478–79; *see* MTD at 12–13. The first factor therefore favors Defendants.

### B. The Videos Were Previously Published and Minimally Creative

Santos' copyright registrations state that all the Videos were published on December 6 and 7, the dates they were created. *See* Siegel Decl. Exs. 14–18. Nonetheless, Santos alleges that he "did not publish the Works to anyone except Defendants" (Am. Compl. ¶ 44) and, on that basis, argues that further "development of the record" is necessary to resolve if the Videos were "published to the public." Opp. at 17–18. That position is a *non sequitur*; in copyright law there is no distinction between "publication" to Defendants and to the public – it is one and the same.

"Publication" means "offering to distribute copies ... to a group of persons *for purposes of further distribution, public performance, or public display*." 17 U.S.C. § 101 (emphasis

5

added).  By claiming the Videos were "published," Santos represented to the Copyright Office that is what he did.  And it is what he did.  Under Cameo's Talent Terms, Santos granted the User *and* Cameo broad licenses to further "distribute," sublicense, and "publicly display" the Videos to others (for the User's personal purposes, as well as Cameo's promotional and other purposes).  Talent Terms § 6(a)–(b)(i) (Siegel Decl. Ex. 1).  That constitutes "publication" as a matter of law.  *See* MTD at 15–16.  Indeed, this case could not be further from *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985) (cited in Opp. at 14–15), because, by definition, any video obtained through Cameo is a published work.[2]

Finally, notwithstanding Santos' self-congratulatory characterization of his creative contributions to the Videos, there is no question that he was not responsible for their substantive content – he expressly alleges that Defendants wrote the text.  Am. Compl. ¶ 60(a)–(e).  The second factor weighs in Defendants' favor.

### C. The Portion Used Was Integral to the Criticism

Santos does not meaningfully dispute that it was necessary for Defendants to show the whole Videos to accomplish their purpose of criticism.  Opp. at 19.  Instead, Santos again argues that should be ignored because the use of the Videos for criticism is not transformative in the first place, solely in this case.  *Id.*  As discussed above, this theory is meritless.  Otherwise, Santos cites cases for the general proposition that copying less is more likely to support a finding of fair use.  But the cases he cites had nothing to do with criticizing the plaintiff's work, and in both this and other contexts "copying the entirety of a work is sometimes necessary to make a

---

[2] Santos' argument on publication, and more broadly his argument that the issue of fair use is not ripe for resolution now, relies heavily on his contention that there is a "disputed fact" over whether Santos also posted some of the Videos on his Cameo profile page.  Opp. at 5.  Even assuming that fact is disputed, it is wholly immaterial to any of the issues raised in Defendants' Motion, including the publication issue. As explained above, Santos "published" the Videos regardless of whether he did or did not also post them on his profile page.  If he did, that would merely be an example of further publication.

fair use." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 90 (2d Cir. 2014) (collecting and citing cases).[3]

### D. The Use Had No Effect on the Relevant Market

Santos' Opposition simply ignores the well-established principle that "the law recognizes no derivative market for critical works." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 592 (1994). And that principle exists for good reason. The fair use doctrine does not, as Santos suggests, require contacting creators to see if they "may agree" to have their works and themselves ridiculed for some negotiated price. Opp. at 16 n.7. Any such requirement would be antithetical to the purposes of copyright law, because it would sharply inhibit criticism and commentary.

Santos attempts to avoid this well-established case law by reformulating the question under the fourth factor as "whether [Defendants'] conduct would have a substantial adverse impact on the potential market in general," including the market for "all other Talent on the Cameo platform" and the platform's "integrity." Opp. at 20. Even if this were the relevant question (it is not), Santos' wholly speculative theory could not survive a motion to dismiss, as the Amended Complaint never alleges a single fact suggesting that other Talent or the Cameo platform have been negatively affected by the JKL segments.

In any event, this argument fails because this factor considers the effect on "the potential market for or value of *the copyrighted work*" itself, not the broader market for *other* works. 17 U.S.C. § 107(4) (emphasis added); *see Andy Warhol Found. for the Visual Arts, Inc. v.*

---

[3] Santos' cited cases involved services that simply *redistributed* the plaintiffs' works, not the transformative use of an underlying work for commentary on and criticism of that work. *See Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 106–07 (2d Cir. 1998) (retransmission of radio broadcasts over the telephone); *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 541 (S.D.N.Y. 2013) (scraping portions of news articles for newsletter to defendant's subscribers).

7

*Goldsmith*, 11 F.4th 26, 49 (2d Cir. 2021) (fourth factor considers existing and potential market for "the specific work alleged to have been infringed"), *aff'd*, 598 U.S. 508 (2023); *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 926–27 (2d Cir. 1994) (fourth factor focuses on "the precise copyrighted works" at issue). Santos identifies no harm to any cognizable market for these specific Videos, and, as noted above, the law precludes any such claim.

## IV. THE FRAUD CLAIM FAILS FOR LACK OF OUT-OF-POCKET LOSS

Santos does not dispute that he "lack[s] ... out-of-pocket damages" and that such loss is a "requirement" of a common-law fraud claim under New York law. Opp. at 1, 21. Nonetheless, he makes the wholly contradictory argument that he can sue for fraud because he pleads a request for disgorgement of Defendants' profits, citing *People v. Ernst & Young, LLP*, 114 A.D.3d 569, 569 (1st Dep't 2014). Opp. at 21. But *Ernst & Young* has nothing to do with the elements of common-law fraud. Rather, it addressed the scope of remedies available in certain statutory enforcement actions by the Attorney General. There is no "disgorgement exception" to the out-of-pocket rule – otherwise, every fraud plaintiff would circumvent the rule by seeking disgorgement. *See Kaufman v. Cohen*, No. 601320/01, 2007 WL 6847230, at *11–12 (Sup. Ct. N.Y. Cnty. Jan. 24, 2007) (rejecting disgorgement claim because "[a]s a matter of law, plaintiffs cannot establish fraud damages by relying on the profits [defendants] are claimed to have reaped"); *LCO Destiny, LLC v. Michaels Stores, Inc.*, No. 07-CV-1140, 2008 WL 11355387, at *4 (N.D.N.Y. June 17, 2008) (explaining that, under the "out-of-pocket rule," "a plaintiff in a fraud action may only recover *its own losses*" (emphasis added)).

## V. THE REMAINING STATE-LAW CLAIMS FAIL AND ARE PREEMPTED

In his Opposition, Santos all but abandons his theory that Defendants breached an alleged contractual obligation to pay $15,000 per Video (including Videos that were never aired) for a commercial use license that they purportedly "contemplated" but is found nowhere in the Site

8

Terms. Am. Compl. ¶ 71. Santos now argues that Kimmel breached Section 1 of the Site Terms by providing false information, and that Santos can enforce this provision (of an agreement between Kimmel and Cameo) as a third-party beneficiary. Opp. at 22–24. Santos is incorrect.

As an initial matter, the Site Terms are governed by Illinois law. Site Terms § 18(b). Illinois law has a "strong presumption" against third-party beneficiaries that can only be overcome by an affirmative intent to benefit the third party. *Nikolic v. Seidenberg*, 610 N.E.2d 177, 180 (Ill. App. 1993). "A third party acquires no rights under a contract entered into by others unless *the provision at issue* was intentionally included for the direct benefit of the third party." *Id.* (emphasis added).

Here, the Site Terms make clear that Santos is not a third-party beneficiary of Section 1. The Site Terms are between "Cameo" ("we" or "us") and the "user of the Site" ("You"). Site Terms pmbl.; *see Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1025 (7th Cir. 2024) (terms of service referring to "you and Ancestry" "indicates that the signatories intended to bind themselves, but not others"). Moreover, the Site Terms expressly delineate that the Talent is an "intended third-party beneficiary" of two specific subsections – neither of which are part of Section 1. *See* Site Terms § 3(f). Santos therefore cannot enforce any other section, including Section 1, as a third-party beneficiary. *See Cohn v. Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1208 (N.D. Ill. 2015) ("Simply being a third party beneficiary to one provision of an agreement does not allow [plaintiff] to enforce other provisions to which she is not a third party beneficiary."); *accord Arroyo v. Plover Hous. Dev. Fund Co.*, No. 451329/2018, 2019 WL 3413541, at *3 (Sup. Ct. N.Y. Cnty. July 29, 2019) (holding that, where "agreement included specific intended third-party beneficiary language in Section 6.08, but omitted that language in section 5.08," plaintiff was not third-party beneficiary of latter section).

Alternatively, Santos now claims that "exchanges" between Kimmel and Santos through the Cameo platform involving requests and payment for the Videos created an express or implied contract between them. Opp. at 24–25; Am. Compl. ¶ 66. On its face, that claim contradicts the Cameo terms governing use of the platform, which expressly provide for (1) an agreement between Cameo and the User (Site Terms), (2) a separate agreement between Cameo and the Talent (Talent Terms), and (3) very limited circumstances for the User and Talent to be third-party beneficiaries of specific provisions in the other's agreement (Site Terms § 3(f); Talent Terms § 6(i)). Nor does Santos allege there were any "exchanges" between Kimmel and himself about providing "true and accurate information" to each other. *See* Am. Compl. ¶¶ 19–22. So even if requesting and delivering a video through Cameo somehow constituted a contract between the User and Talent to provide and pay for a video, it would make no difference. Santos alleges no plausible breach of any such contract, because he concedes that Kimmel fully paid for the personal use licenses he requested. Rather, Santos' real complaint remains that Kimmel subsequently exceeded the scope of that license, and he wants more money for that. *See id.* ¶ 71. But such claims are preempted by the Copyright Act (*see* MTD at 21–25), and Santos does not try to argue otherwise. In short, Santos fails to plausibly plead any claim for breach of contract, and if he did it would only be a claim that is preempted.[4]

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Amended Complaint, with prejudice.

---

[4] Santos' Opposition does not even attempt to defend his unjust enrichment claim. That claim is just as defective as his other claims and should be dismissed. *See Smith v. Apple, Inc.*, 583 F. Supp. 3d 554, 569 (S.D.N.Y. 2022) (Cote, J.) ("unjust enrichment claim must be dismissed" where it "simply restates" other claims and plaintiffs "do not explain why their unjust enrichment claim is distinct" from other claims).

Dated: July 3, 2024

Respectfully submitted,

By: */s/ Nathan Siegel*

Nathan Siegel
Eric Feder
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005
(202) 973-4200
nathansiegel@dwt.com
ericfeder@dwt.com

Raphael Holoszyc-Pimentel
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
(212) 489-8230
rhp@dwt.com

*Attorneys for Defendants James C. Kimmel a/k/a Jimmy Kimmel, American Broadcasting Companies, Inc., and The Walt Disney Company*